IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CT-3035-D

| | | |
|---|---|---|
| HAMZA TEBIB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ROBERT D. FOUNTAIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On February 6, 2025, Hamza Tebib ("Tebib" or "plaintiff"), a pretrial detainee and notorious pro se litigant, filed a complaint under 42 U.S.C. § 1983 and North Carolina law [D.E. 1]. Tebib is awaiting trial in Granville County Superior Court on over 20 felony charges involving sex offenses against a minor. See [D.E. 22] 1. On November 18, 2025, the court granted Tebib's motion to amend the complaint, reviewed the amended complaint under 28 U.S.C. § 1915A, and allowed the action to proceed against Robert D. Fountain ("Fountain"), Fred Robertson ("Robertson"), Granville County, and Western Surety Company (collectively, "defendants") [D.E. 11]. Fountain is the Sheriff of Granville County, and Robertson is the Jail Administrator of the Granville County Detention Center.

On January 28, 2026, defendants Fountain, Robertson, and Granville County moved to dismiss the amended complaint. See Fed. R. Civ. P. 12(b)(6); [D.E. 21]. That same day, Western Surety Company moved to dismiss the amended complaint. See Fed. R. Civ. P. 12(b)(2), (4), (5); [D.E. 25]. The court notified Tebib about the motions to dismiss, the consequences of failing to respond, and the response deadlines [D.E. 27, 28]. See Roseboro v. Garrison, 528 F.2d 309, 310

(4th Cir. 1975) (per curiam). On February 6, 2026, Tebib responded in opposition to defendants' motions to dismiss [D.E. 29]. On February 16, 2026, defendants replied [D.E. 30, 31].[1] Tebib also moves for entry of default [D.E. 15], Rule 11 sanctions [D.E. 33], injunctive relief [D.E. 35], and to toll the time for Rule 11 response compliance [D.E. 36]. As explained below, the court grants defendants' motions to dismiss and denies Tebib's motions.

I.

The allegations of Tebib's amended complaint arose at the Granville County Detention Center ("GCDC"). See [D.E. 10] ¶¶ 7–26. Tebib is a pretrial detainee and observes the Islamic fast of Ramadan. See id. Tebib alleges he missed four meals during Ramadan in 2023 and eleven meals during Ramadan in 2024 because an unidentified private vendor kitchen contractor delivered the meals to the cells just before or just after sunrise; therefore, Tebib could not eat the meals because all trays were collected later that morning. See id.; [D.E. 8] ¶¶ 13–15. Tebib seeks relief under (1) the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. against Fountain, Robertson, and Granville County (count one); (2) 42 U.S.C. § 1983 and the Fourteenth Amendment's Due Process Clause for punishment of a pretrial detainee and nutritional deprivation against all defendants (count two); (3) 42 U.S.C. § 1983 and the Fourteenth Amendment's Equal Protection Clause and Article I, § 19 of the North Carolina Constitution against Fountain, Robertson, and Granville County (count three); (4) 42 U.S.C. § 1983 and the First Amendment for retaliation for protected conduct against Fountain, Robertson, and Granville County (count four); (5) municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1974), for failure to train, supervise, and maintain a

[1] The court denies Tebib's motion for leave to file a sur-reply [D.E. 32]. See Local Civil Rule 7.1(f)–(g).

policy against Granville County (count five); and (6) a claim under North Carolina law for intentional infliction of emotional distress against all defendants (count six). See [D.E. 10] at ¶¶ 27–62.

## II.

The court has reviewed Fountain, Robertson, and Granville County's motion to dismiss and Tebib's amended complaint under the governing standard. See Fed. R. Civ. P. 12(b)(6). Tebib's amended complaint incorporates his affidavit filed on April 14, 2025. See [D.E. 8]. The standard used to evaluate the sufficiency of a pleading is flexible, and "a pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Twombly, 550 U.S. at 555–63, 570; Seabrook v. Driscoll, 148 F.4th 264, 269–70 (4th Cir. 2025); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; Coleman, 626 F.3d at 190; Giarratano, 521 F.3d at 302. To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (cleaned up); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light

most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (citation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (citation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

As for Granville County, Tebib alleges in a conclusory fashion that Granville County "funds and oversees jail operations and training." [D.E. 10] ¶ 11. To state a claim under section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Campbell v. Florian, 972 F.3d 385, 392 n.5 (4th Cir. 2020); N.C. All. For Retired Ams. V. Hirsch, 741 F. Supp. 3d 318, 334 (E.D.N.C. 2024). A section 1983 plaintiff also must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell, 436 U.S. at 691–94; Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985); Hirsch, 741 F. Supp. 3d at 334.

When a municipal entity is sued—directly or in an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–05 (1997) (quotation omitted); see Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; Mullen v. Town of Sunset Beach, 175 F.4th 466, 472–73 (4th Cir. 2026); King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). "Monell's 'policy or custom' requirement applies in [section] 1983 cases irrespective of whether the relief sought is monetary or prospective." Los Angeles Cnty. v. Humphries, 562 U.S. 29, 39 (2010). There are four ways in which liability for a policy or custom may arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–23 (1988). Even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, a municipality is not liable simply because a section 1983 plaintiff can "identify conduct attributable to the municipality." Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Brown, 520 U.S. at 404 (cleaned up); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524; Sharpe, 480 F. Supp. 3d at 700. Thus, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Mullen, 175 F.4th at 472–74; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999), abrogated on other grounds by Short v. Hartman, 87 F.4th 593 (4th Cir. 2023), cert. denied, 144 S. Ct. 2631 (2024); see Mullen, 175 F.4th at 472. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a

section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404.

Under North Carolina law, sheriffs possess primary authority for operating county detention facilities. See N.C. Gen. Stat. § 162-22; Knight v. Vernon, 214 F.3d 544, 552–53 (4th Cir. 2000). To the extent that Tebib seeks to hold Granville County liable under section 1983 or any other law for the acts or omissions of the Granville County Sheriff or one of his subordinates, the federal claims fail. See, e.g., Knight, 214 F.3d at 552–53. Moreover, even if Granville County funds jail operations, such funding does not impose liability on Granville County. See, e.g., McMillian v. Monroe Cnty., 520 U.S. 781, 791–92 (1997); Engleman v. Cumberland Cnty., No. 5:12–CV–147, 2013 WL 157065, at *5 (E.D.N.C. Jan. 15, 2013) (unpublished). Thus, the court dismisses Tebib's federal claims against Granville County.

As for Tebib's Monell claim, Tebib also has failed to plausibly allege a municipal policy or custom, deficient training, or causation. See, e.g., Cooper v. City of Wheeling, 169 F.4th 220, 227 (4th Cir. 2026); Schmitz v. Wake Cnty. Bd. of Educ., No. 5:25-CV-553, 2026 WL 989089, at *3 (E.D.N.C. Apr. 13, 2026) (unpublished); Adcock v. Durham Cnty., No. 1:25-CV-6, 2026 WL 883872, at *8–9 (M.D.N.C. Mar. 31, 2026) (unpublished), report and recommendation adopted, 2026 WL 1124786 (M.D.N.C. Apr. 24, 2026) (unpublished); Cataffo v. Jackson Cnty. Police Dep't, No. 2:25-524, 2026 WL 471362, at *4–5 (S.D. W. Va. Jan. 21, 2026) (unpublished), report and recommendation adopted, 2026 WL 466744 (S.D. W. Va. Feb. 18, 2026) (unpublished); Lesane v. Wake Cnty. Child Support Enf't Agency, No. 5:25-CV-212, 2025 WL 3475587, at *10 (E.D.N.C. Oct. 16, 2025) (unpublished), report and recommendation adopted, 2025 WL 3476552 (E.D.N.C. Dec. 3, 2025) (unpublished); Moore v. Barnes, 802 F. Supp. 3d 792, 851 (E.D.N.C.

2025); Tebib v. Fountain, No. 5:25-CT-3036, 2025 WL 3431904, at *3 (E.D.N.C. Sept. 19, 2025) (unpublished). Moreover, an isolated incident of alleged misconduct or incompetence by the Sheriff's subordinate employees or an unidentified kitchen contractor does not suffice to plausibly allege a custom or policy or deficient training by Granville County under section 1983. See, e.g., Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985) (plurality opinion); Randall v. Prince George's Cnty., 302 F.3d 188, 206–07 (4th Cir. 2002); Carter, 164 F.3d at 219–20; Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); Spell, 824 F.2d at 1390; Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984); Avery v. Burke Cnty., 660 F.2d 111, 114 (4th Cir. 1981). Thus, the court grants Granville County's motion to dismiss and dismisses Tebib's federal claims against Granville County.

B.

As for Fountain and Robertson, Tebib alleges these defendants are responsible for food service and meal coordination at the GCDC in their roles as the Sheriff of Granville County and Jail Administrator at the GCDC. See [D.E. 10] ¶¶ 8–9. Tebib alleges Fountain retained a private vendor to prepare and deliver meals to inmates at GCDC. See id. ¶ 10. Tebib alleges he missed five meals during Ramadan in 2023 and eleven meals during Ramadan in 2024 because "the kitchen contractor and staff failed to deliver food at approved hours." Id. ¶¶ 15–16; see also [D.E. 8] ¶ 13. Tebib alleges the kitchen contractor "missed deliveries under [Fountain's] authority." [D.E. 10] ¶ 32(c). Tebib alleges "[t]he increase from five to eleven missed meals shows an evolving pattern of neglect and retaliation coinciding with [Tebib's] grievances and lawsuits against [Fountain]." Id. ¶ 17. Tebib alleges Robertson "ignored grievances and failed to coordinate meals." Id. ¶ 32(b).

Tebib alleges during Ramadan in 2024, Fountain "attempt[ed] to account for how many Muslims did not eat breakfast, [and Tebib] ha[d] reason to believe that [Fountain] inten[ded] to measure in order to improve." [D.E. 8] ¶ 14. Tebib alleges Fountain "modified the feeding plan for Muslim in Ramadan to serve One and Half Tray portion during Breakfast (Before Ramadan Fast begin) and One Tray and Snack b[a]g (one and half) later after Ramadan Fast End." Id. ¶ 17. Tebib alleges Fountain's "[p]lan modifying the meal distribution and portions is brilliant and for a legitimate good reason. [The] ONLY issue is when it fail[s], and the failure rate is substantial, some of the failure[s] are back to back ranging from 2 days till 4 days at the time." Id. ¶ 19. Tebib alleges he missed five meals in 2023 and eleven meals in 2024 during Ramadan because of Fountain's failure as a manager. Id. ¶ 13. Tebib alleges Fountain "blame[d] kitchen staff and kitchen staff blame[d] [Fountain's] tight schedule imposed on [the] kitchen." Id. ¶ 24. Tebib also notes that he could not eat the pre-dawn meals in the evening because staff collected the trays after sunrise and before sunset. See id. ¶ 15.

Tebib alleges supervisory liability claims under section 1983 against Fountain and Robertson. Liability for inadequate supervision is not premised upon respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan, 737 F.2d at 372. To establish supervisory liability under section 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (quotations omitted). Under Shaw, the subordinate's conduct must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions." Id. In order to meet the "heavy burden of proof in establishing deliberate indifference," a plaintiff must demonstrate a supervisor's "continued inaction in the face of documented widespread abuses." Id. But, "a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Slakan, 737 F.2d at 373 (quotation omitted); see Randall, 302 F.3d at 206; Shaw, 13 F.3d at 799. The same principle applies to the negligent acts of a subordinate.

"In order to state a claim for supervisory liability, a plaintiff must plead that each supervisory defendant, through the official's own individual actions, has violated the Constitution." Doe v. Durham Pub. Sch. Bd. of Educ., No. 1:17-CV-773, 2019 WL 331143, at *9 (M.D.N.C. Jan. 25, 2019) (unpublished) (cleaned up); see Iqbal, 556 U.S. at 676–77. "A supervisor cannot be held liable absent a constitutional violation by the people [he] supervised." Chennault v. Mitchell, 923 F. Supp. 2d 765, 787 (E.D. Va. 2013); see City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam).

Tebib fails to plausibly allege personal involvement or deliberate indifference by Fountain or Robertson concerning the kitchen contractor's meal deliveries in 2023 and 2024. See, e.g., King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2008); Newell v. N.C. Indus. Comm'n, No. 5:20-CT-3366, 2021 WL 3121491, at *2 (E.D.N.C. July 16, 2021) (unpublished), aff'd, 2023 WL 1433635 (4th Cir. 2023) (per curiam) (unpublished). In fact, Tebib alleges Fountain modified the meal plan to accommodate Tebib during Ramadan. See [D.E. 8] ¶¶ 14–19. The kitchen contractor's occasional failure to timely deliver Tebib his morning meals during Ramadan in 2023 and 2024 suggests at most negligence on the part of the kitchen

contractor. Negligence does not suffice to state a claim under 42 U.S.C. § 1983. See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1988); Baynard v. Malone, 268 F.3d 228, 236 (4th Cir. 2001); Ofori v. Fleming, No. 7:20-CV-344, 2023 WL 6368222, at *10 (W.D. Va. Sept. 28, 2023) (unpublished), aff'd, 2025 WL 1098847 (4th Cir. 2025) (per curiam) (unpublished); Booker v. Engelke, No. 7:16-CV-84, 2019 WL 1372165, at *7 (W.D. Va. Mar. 26, 2019) (unpublished), aff'd, 830 F. App'x 415 (4th Cir. 2020) (per curiam) (unpublished); Bradshaw v. Willie, No. 5:16-CT-3011, 2016 WL 1180190, at *2 (E.D.N.C. Mar. 25, 2016) (unpublished) (collecting cases). Thus, Tebib's section 1983 claims against Fountain and Robertson fail.

Alternatively, Tebib's section 1983 claims fail for another reason. To state a claim for failure to train or supervise, a plaintiff must plausibly allege "(1) that the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) that the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) that this failure to train actually caused the subordinates to violate the plaintiff's rights." Moody v. City of Newport News, 93 F. Supp. 3d 516, 537 (E.D. Va. 2015); see Harris, 489 U.S. at 388–92; Shaw, 13 F.3d at 799; Gallimore v. Henrico Cnty. Sch. Bd., 38 F. Supp. 3d 721, 726 (E.D. Va. 2014).

Tebib "does not allege any facts describing alleged deficiencies in [Fountain and Robertson's] training or supervision of [the kitchen contractor] or how such failures caused the [alleged] resulting violation of [Tebib's] rights." Carter v. Tatum, No. 3:23-CV-239, 2023 WL 6797494, at *8 (E.D. Va. Oct. 13, 2023) (unpublished); see Byers v. City of Richmond, No. 3:23-CV-801, 2026 WL 1747219, at *6 (E.D. Va. June 17, 2026) (unpublished); Sims v. Mondul, No. 7:25-CV-349, 2026 WL 323835, at *6–7 (W.D. Va. Feb. 6, 2026) (unpublished). Thus, Tebib's failure to train or supervise claim against Fountain and Robertson fails.

C.

As for Tebib's claim that Fountain and Robertson retaliated against him for filing lawsuits against them, to state a First Amendment retaliation claim, Tebib must plausibly allege (1) protected activity under the First Amendment, (2) the defendants took action to adversely affect Tebib's First Amendment rights, and (3) a causal relationship between the protected activity and the defendants' conduct. See Gowen v. Winfield, 130 F.4th 162, 173 (4th Cir. 2025); Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537 (4th Cir. 2017); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).

Tebib's allegations that Fountain and Robertson retaliated against him via the missed meals in 2023 and 2024 for filing lawsuits are "conclusory assertions about the defendants' motivations with no facts stated to connect their actions with his constitutionally protected conduct." Thompson v. Clarke, No. 7:17-CV-10, 2018 WL 1547360, at *5 (W.D. Va. Mar. 29, 2018) (unpublished); see Adams v. Rice, 40 F.3d 72, 74–75 (4th Cir. 1994). Thus, Tebib's First Amendment retaliation claim against Fountain and Robertson fails.

D.

As for Tebib's claim that Fountain and Robertson denied him his rights under the Equal Protection Clause of the Fourteenth Amendment, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Tebib has failed to plausibly allege that Fountain and Robertson treated him differently than other similarly situated detainees or that the alleged unequal treatment was the result of

intentional discrimination. See, e.g., Sabbats v. Clarke, No. 7:21CV198, 2022 WL 4134771, at *7–8 (W.D. Va. Sept. 12, 2022) (unpublished); Ray v. Cnty. of Pender, No. 5:21-CT-3064, 2022 WL 243318, at *4–5 (E.D.N.C. Jan. 25, 2022) (unpublished); Fuller v. Honeycutt, No. 1:21-CV-348, 2022 WL 19791, at *4 (W.D.N.C. Jan. 3, 2022) (unpublished). To the contrary, Tebib alleges Fountain modified the meal plan to accommodate Tebib and others who observe Ramadan. See [D.E. 8] ¶¶ 14–19. Tebib's allegation of the kitchen contractor's occasional negligence does not suffice. Thus, Tebib's equal protection claim against Fountain and Robertson fails.

E.

As for Tebib's claims that Fountain and Robertson violated his rights under the First Amendment and RLUIPA during Ramadan in 2023 and 2024, the Free Exercise Clause of the First Amendment protects inmates from unreasonable policies and regulations that are "designed to suppress religious beliefs or practices" or that unreasonably "impose a substantial burden on a prisoner's right to practice his religion." Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014) (quotation omitted). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018); see Wilcox v. Brown, 877 F.3d 161, 168 (4th Cir. 2017); Westhook v. Bailey, No. DLB-25-602, 2026 WL 1279114, at *4 (D. Md. May 11, 2026) (unpublished). A practice or policy "places a substantial burden on a person's religious exercise when it puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Hammock v. Watts, 146 F.4th 349, 365 (4th Cir. 2025) (quotation omitted); Carter, 879 F.3d at 139.

RLUIPA provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005); see Holt v. Hobbs, 574 U.S. 352, 357–58 (2015); Pendleton v. Jividen, 96 F.4th 652, 656 (4th Cir. 2024); Greenhill v. Clarke, 944 F.3d 243, 249–50 (4th Cir. 2019); Wright v. Lassiter, 921 F.3d 413, 418 (4th Cir. 2019); Carter, 879 F.3d at 139–40; Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015); Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009); Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006).

Under RLUIPA, the inmate initially must show that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt, 574 U.S. at 360; Pendleton, 96 F.4th at 656; Greenhill, 944 F.3d at 250. The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); see Holt, 574 U.S. at 358; Greenhill, 944 F.3d at 250; Smith, 578 F.3d at 251. A substantial burden places "substantial pressure on an adherent to modify his behavior and to violate his beliefs" or "forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand." Lovelace, 472 F.3d at 187 (cleaned up). The court may "not judge the significance of the particular belief or practice in question." Id. at 187 n.2.

Tebib's conclusory allegations fail to plausibly allege a policy substantially burdening the exercise of his religion in violation of either the First Amendment or RLUIPA. See, e.g., Johnson v. Reynolds, No. 7:25-CV-170, 2026 WL 868877, at *3 (W.D. Va. Mar. 30, 2026) (unpublished); Ofori, 2023 WL 6368222, at *10; Prosha v. Robinson, No. 3:16CV163, 2018 WL 564855, at *3 n.9 (E.D. Va. Jan. 25, 2018) (unpublished) (collecting cases); cf. Pendleton, 96 F.4th at 656–58. Instead, Tebib alleges that Fountain devised a program to provide nutrition before sunrise to those observing Ramadan. Despite the program, Tebib missed Ramadan meals on limited occasions in 2023 and 2024 because the kitchen contractor negligently failed to ensure timely delivery of meals. See [D.E. 8] ¶¶ 14–19. Tebib does not allege Fountain or Robertson directed the kitchen contractor to delay his meals. See id. Rather, Tebib alleges that the kitchen contractor occasionally was negligent. See id. Those allegations do not suffice to state a claim under the First Amendment or RLUIPA. See, e.g., Lovelace, 472 F.3d at 194 (holding that simple negligence "does not suffice to meet the fault requirement" under RLUIPA). Accordingly, Tebib's First Amendment and RLUIPA claims against Fountain and Robertson fail.

F.

Tebib's remaining claims arise under North Carolina law. In light of the dismissal of Tebib's federal claims, the court declines to exercise supplemental jurisdiction over Tebib's state-law claims. See 28 U.S.C. § 1367(c)(3); Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 31–32 (2025); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Poppleton v. New Cmty. Ass'n, Inc. v. La Cite Dev., LLC, 175 F.4th 455, 464–65 (4th Cir. 2026); Kovachevich v. Nat'l Mortg. Ins. Corp., 140 F.4th 548, 556 (4th Cir. 2025); Henderson v. Harmon, 102 F.4th 242, 251 (4th Cir. 2024); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58

F.3d 106, 110 (4th Cir. 1995). Thus, the court dismisses without prejudice Tebib's state-law claims against Granville County, Fountain, and Robertson and grants Fountain and Robertson's motion to dismiss.

III.

As for Western Surety Company's motion to dismiss, Western Surety Company argues that Tebib did not properly serve Western Surety Company. See [D.E. 26] 3–4. Thus, Western Surety Company argues that this court lacks personal jurisdiction over it. See Fed. R. Civ. P. 12(b)(4), (5).

A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, and a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of "service" of process. See id.; Morris-Wilkins v. Assurity Life Ins. Co., No. 5:24-CV-449, 2025 WL 1005050, at *1 (E.D.N.C. Apr. 3, 2025) (unpublished); Kennedy v. Rowe, No. 5:23-CV-264, 2024 WL 2703016, at *2 (E.D.N.C. May 24, 2024) (unpublished). Stated differently, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery. See, e.g., 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004). For example, a typical Rule 12(b)(4) challenge alleges that the entity named in the summons is different from the entity named in the complaint or that the summons was not served with the complaint. A typical Rule 12(b)(5) challenge alleges that the process was delivered by a person incapable of serving process (such as a party), to a person or entity incapable of receiving service (such as a minor), or that the service was delivered in an improper way (such as via first-class mail). See, e.g., Stokes v. JPMorgan Chase Bank, NA, No. 8:11-CV-2620, 2012 WL 527600, at *5–6 (D. Md. Feb. 16, 2012) (unpublished). Plaintiff bears the burden of establishing proper

service of process. See Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); Dalenko v. Stephens, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013).

Service rules ensure that a defendant receives due process and that the court has personal jurisdiction over a defendant. Moreover, the rules concerning how to serve a corporation help to alert those receiving a corporation's mail that the mail includes a lawsuit. These rules concerning service of process apply equally to litigants proceeding with or without counsel and litigants who are incarcerated or not incarcerated. Service of process is not a mere formality, and courts should not overlook procedural deficiencies even if actual notice occurred. See, e.g., Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984); McDaniel v. Greyhound Lines, Inc., No. 3:08-CV-130, 2008 WL 2704774, at *4–5 (W.D.N.C. July 7, 2008) (unpublished); Shaver v. Cooleemee Volunteer Fire Dep't, No. 1:07-CV-175, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008) (unpublished); Hoyle v. United Auto Workers Loc. Union 5285, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006).

Tebib did not properly serve Western Surety Company. See [D.E. 25]. Tebib caused a summons to be issued against Western Surety Company and addressed it to "Granville County Sheriff's Office, 525 New Commerce Drive, Oxford, NC 27565." [D.E. 12] 4. Granville County Sheriff's Office is not the corporate office or other registered office for Western Surety Company to be served with process. See [D.E. 25] 1. Moreover, the Granville County Sheriff's Office and the Sheriff of Granville County are not the agent or representative of Western Surety Company or otherwise authorized to accept service of process for Western Surety Company. See id. at 1–2.

Tebib failed to properly serve Western Surety Company within 90 days of filing his complaint. See [D.E. 12] 4; [D.E. 25]; [D.E. 26]; cf. Fed. R. Civ. P. 4(m). Tebib had to follow the requirements of Federal Rule of Civil Procedure 4(h) to serve Western Surety Company. He

did not. Moreover, Tebib's pro se status does not constitute good cause to extend the deadline. See, e.g., Gelin v. Shuman, 35 F.4th 212, 218 (4th Cir. 2022); Attkisson v. Holder, 925 F.3d 606, 627–28 (4th Cir. 2019); Bolus v. Fleetwood RV, Inc., 308 F.R.D. 152, 155 (M.D.N.C. 2015), aff'd, 646 F. App'x 316 (4th Cir. 2016) (per curiam) (unpublished). Thus, the court grants Western Surety Company's motion to dismiss and dismisses without prejudice Western Surety Company.

IV.

As for Tebib's motion for entry of default, Tebib has not shown that defendants failed to plead or otherwise defend this action. See Fed. R. Civ. P. 55(a). Thus, the court denies the motion.

As for Tebib's motion for sanctions, Tebib alleges defendants' motions to dismiss were not filed in good faith given that his complaint survived frivolity review under 28 U.S.C. § 1915A. See [D.E. 33] 1–12. Defendants respond that the standard under 28 U.S.C. § 1915A and Rule 12(b)(6) are not the same and that their motions are "well founded, fully grounded in the law, made in good faith, and are meritorious." [D.E. 34] 3. Defendants also argue that Tebib has "made it his pastime to weaponize the judicial system in order to antagonize those who do not accede to [Tebib's] bidding." Id. at 2. Defendants note that Tebib has filed over 35 cases in state and federal courts and has a prefiling injunction issued against him in state court. See id. at 1–3; [D.E. 34-1] 2–13.

The court has considered Tebib's motion for sanctions under the governing standard. See Fed. R. Civ. P. 11; Liu v. Lowe's Home Improvement, No. 23-1105, 2024 WL 3102796, at *2 (4th Cir. 2024) (per curiam) (unpublished). The court denies the motion for reasons stated in defendants' response in opposition. See [D.E. 34] 1–3; see also Tebib, 2025 WL 3431904, at *4.

The standards under 28 U.S.C. § 1915A and Rule 12(b)(6) are not the same. The court also denies Tebib's motion to toll time for Rule 11 response compliance as baseless.

As for Tebib's motion for injunctive relief, Tebib seeks an order directing defendants to process and deliver his mail promptly, open his legal mail in his presence, maintain and preserve a log of his mail, refrain from retaliatory conduct related to his litigation activities, and refrain from obstructing his access to the courts. See [D.E. 35] 1–6. Tebib cannot obtain injunctive relief on issues unrelated to the claims in his amended complaint. See, e.g., Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997). Thus, the court denies the motion.

Alternatively, the court has considered Tebib's motion for injunctive relief under the governing standard. See, e.g., Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, 188 (4th Cir. 2013) (en banc). Tebib has not plausibly alleged that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest.

V.

In sum, the court GRANTS Fountain, Robertson, and Granville County's motion to dismiss [D.E. 21], GRANTS Western Surety Company's motion to dismiss [D.E. 25], and DENIES plaintiff's motions [D.E. 15, 32, 33, 35, 36]. The court DISMISSES WITHOUT PREJUDICE plaintiff's amended complaint.

SO ORDERED. This 11 day of August, 2026.

JAMES C. DEVER III
United States District Judge